IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE THOMAS, | ) | CASE NO. 1:08 CV 830 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Joanne Thomas, for disability insurance benefits. The parties have consented to the jurisdiction of the magistrate judge.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Thomas had severe impairments consisting of cervical spondylosis and left shoulder tendinopathy.[1] The ALJ determined that Thomas had the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work. Specifically, she can lift, carry, push and pull five pounds frequently and ten pounds occasionally; stand/walk six hours in an eight-hour day; sit six hours in an eight-hour day; no climbing ladders, ropes, or scaffolds; frequently engage in overhead reaching with the left extremity; frequently handle and finger with the left extremity.[2]

---

[1] Transcript ("Tr.") at 16.

[2] *Id.* at 17.

The ALJ found that the above-quoted residual functional capacity rendered Thomas unable to perform her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the residual functional capacity quoted above, the ALJ decided that a significant number of jobs existed locally and nationally that Thomas could perform.[4] The ALJ, therefore, found Thomas not under a disability.[5]

Thomas asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Thomas asserts three issues for decision in this case:

- Whether the ALJ properly analyzed the plaintiff's complaints of disabling pain,

- Whether the ALJ properly analyzed the opinions of plaintiff's treating physicians, and

- Whether substantial evidence supports the residual functional capacity set forth in the ALJ's finding and in the hypothetical question posed to the vocational expert at the hearing.

I conclude that the ALJ's finding that Thomas could frequently engage in overhead reaching and handling and fingering with the left extremity lacks the support of substantial evidence in the administrative record. Accordingly, this case must be remanded for reconsideration of the residual functional capacity finding.

---

[3] *Id.* at 21.

[4] *Id.* at 22.

[5] *Id.* at 23.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    Substantial weight of the evidence, the residual functional capacity finding, and the hypothetical to the vocational expert**

The core controversy presented here is best understood by comparing two hypotheticals that the ALJ put to the vocational expert and the answers to those hypotheticals. The first hypothetical contains the limitations eventually incorporated into the ALJ's step four residual functional capacity finding:

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

> I'd like you to consider a 44-year-old individual that has a high school education and has a vocational background identical to that of Ms. Thomas. This person would have the following exertional and non-exertional limitations. They could lift and carry 10 pounds frequently, five pounds occasionally but they could stand and walk for six hours out of the eight-hour day. And they could sit for at least six hours out of the eight-hour day and they could push or pull up to 10 pounds frequently – I'm sorry, occasionally – and five pounds frequently. This person couldn't climb ladders, ropes, or scaffolds. And they would be able to frequently engage in overhead reaching with the left extremity. And they could frequently handle and finger with the left extremity.[7]

In response, the vocational expert opined that Thomas could not perform her past relevant work but could do work that existed in substantial numbers at the sedentary and light levels.[8]

The second hypothetical that the ALJ propounded contained additional limitations on standing and walking and on reaching, handling, fingering, and feeling:

> This person would be the same age, educational background, and the same vocational background. And they would be limited to lifting 10 pounds occasionally and five pounds frequently but this person could only stand and walk two hours out of the eight-hour day and they could also only sit for two hours out of the eight-hour day. And, in addition, their reaching would be limited to less than occasionally, handling, fingering, and feeling would be occasional and pushing and pulling would be less than occasional.[9]

The hypothetical did not specify to which hand and arm the limitations related. The ALJ based this hypothetical on the residual functional capacity assessment of Lolita Agra, M.D.,

---

[7] Tr. at 334.

[8] *Id.* at 334-35.

[9] *Id.* at 337.

-4-

one of Thomas's treating physicians.[10] In response, the vocational expert testified that no work existed.[11]

These hypotheticals differ in two respects. First, the former hypothetical imposes no limitations on sitting, standing, or walking.[12] The latter hypothetical limits Thomas to two hours for these activities in an eight-hour day.[13] Second, the latter hypothetical contains limitations on reaching, handling, fingering, and feeling.[14] The former hypothetical provides that Thomas can frequently engage in overhead reaching with the left extremity and frequently handle and finger with the left extremity.[15]

Thomas has zeroed in on these differences in challenging the ALJ's residual functional capacity finding and the first hypothetical propounded to the vocational expert. She argues that the ALJ should have limited her ability to sit, stand, and walk. Further, she maintains that the residual functional capacity finding should have included a limitation on the use of at least her left hand, arm, and shoulder.

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at 334.

[13] *Id.* at 337.

[14] *Id.*

[15] *Id.* at 334.

With respect to the ability to sit, stand, and walk, Dr. Agra did incorporate such limitations into her residual functional capacity evaluation.[16] The ALJ rejected these limitations as unsupported by Dr. Agra's treatment notes.[17] I have reviewed those treatment notes and have found no references that would support such limitations.[18]

Further, other medical sources who treated or examined Thomas have proposed no such limitations.  Matthew Myers, D.C., a treating chiropractor, imposed no limitations on sitting, standing, or walking.[19] Claudet Smith, M.D., a consultative examining physician, offered that Thomas had no difficulty with sitting or walking.[20] And examining physicians at Community Health Partners Lorain Clinic placed no limitations on sitting or walking.[21]

When asked at the hearing before the ALJ about the "biggest problem you have with working a full-time job at the present time,"[22] she answered, "I can't hold my arm up [left arm] to do a decent haircut."[23] She made no mention of difficulty with sitting, standing, or walking.

---

[16] *Id.* at 295.

[17] *Id.* at 21.

[18] *Id.* at 239, 247.

[19] *Id.* at 213.

[20] *Id.* at 190.

[21] *Id.* at 150, 151.

[22] *Id.* at 326.

[23] *Id.* at 327.

Under the substantial evidence standard, therefore, a reasonable person could conclude that no limitations on sitting, standing, or walking were warranted based on this record.

Problems with the left shoulder, arm, and hand are another matter, however. The ALJ rejected such limitations primarily on the lack of objective medical findings as to any problems with the shoulder based on MRIs and x-rays.[24] As the ALJ observed, and as counsel for the Commissioner vigorously argued at the hearing before me, isolating on the shoulder, there is no evidence to support a limitation on the use of the left shoulder, arm, or hand. An MRI taken in April of 2003 was unremarkable.[25] Another MRI in December of 2004 disclosed mild tendinosis/tendinopathy of the supraspinatus tendon without evidence of rotator cuff tear.[26] An x-ray in August of 2005 was negative.[27] And another MRI done in June of 2007 disclosed only muscle strain of the left shoulder.[28]

Nevertheless, every medical source who examined or treated Thomas or reviewed her records concluded that she suffered from pain and decreased sensation in the left shoulder and hand caused by nerve impingement from cervical spine degeneration. Dr. Agra, the treating physician, found pain in the neck and left shoulder from pressure on the cervical

---

[24] *Id.* at 21.

[25] *Id.* at 159.

[26] *Id.* at 147.

[27] *Id.* at 262.

[28] *Id.* at 297.

spine and imposed limitations on reaching, handling, fingering, feeling, and pushing/pulling.[29] Dr. Myers, her treating chiropractor, reported that orthopaedic tests for neck pain and nerve root encroachment/impingement were positive and found Thomas markedly limited in pushing/pulling and reaching.[30] Dr. Smith, the consulting examining physician, diagnosed neck pain secondary to cervical degenerative joint disease, foraminal stenosis, and disc bulging, and left shoulder and arm pain secondary to cervical spine disease.[31] He opined that she had limitations lifting with her left hand and lifting and handling objects with her left hand.[32] And Arthur L. Sagone, Jr., M.D., the state agency reviewing physician, concluded that Thomas had chronic neck pain secondary to documented cervical degenerative disc disease, foraminal stenosis, and disc bulging, causing a reduced range of motion in the left shoulder.[33] He opined that she could not perform repeated overhead reaching with the left shoulder and that fine manipulation was limited in the left hand due to weakness.[34] The ALJ's finding that Thomas could frequently engage in overhead reaching with the left extremity and frequently handle and finger with the left extremity must fail as an unnecessarily limited evaluation of the left shoulder in isolation

---

[29] *Id.* at 295-96.

[30] *Id.* at 211-13.

[31] *Id.* at 190.

[32] *Id.*

[33] *Id.* at 182.

[34] *Id.* at 184.

from the problems caused by cervical nerve impingement. It does not have the support of substantial evidence in that a reasonable person based on this record could not reach that conclusion.

I cannot accept that the absence of limitations on the use of the left shoulder and hand constitutes harmless error on this record. As I observed at the oral argument, I suspect that incorporation of a limitation on the use of the left shoulder and hand, which are not dominant,[35] would not bring about a change in the vocational expert's answer that a substantial number of jobs exists locally and nationally that Thomas could perform. I cannot, however, substitute my speculation for substantial evidence in this record. Substantial evidence simply does not support the finding that Thomas could frequently engage in overhead reaching and handling and fingering with the left extremity. This case must be remanded for a determination of whether some limitation on the use of the left arm and hand would nevertheless result in a finding of no disability at step five of the sequential evaluation process.

On remand, the ALJ must also determine the degree of limitation on the use of the left arm and hand. Here, as indicated above, the various treating, consulting, and examining physicians have recognized limitations to varying degrees. The ALJ may want to exercise his discretion to call a medical expert to review these opinions and the objective medical evidence and to offer an opinion as to the appropriate degree of limitation.

---

[35] *Id.* at 316.

## Conclusion

Based on the foregoing, I hereby reverse the decision of the Commissioner denying Thomas's application for disability insurance benefits and remand the case for reconsideration of the residual functional capacity finding with respect to limitations on the use of Thomas's left extremity.

IT IS SO ORDERED.


Dated: February 11, 2009                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge